CARNEGIE STEEL CO., Limited, v. BRISLIN et al.

(Circuit Court of Appeals, Third Circuit.   August 6, 1903.)

No. 18.

1. PATENTS—INFRINGEMENT—FEEDING MECHANISM FOR ROLLING MILLS.

The Brislin and Vinnac patent, No. 345,953, for feeding mechanism for rolling mills, claim 1, which covers a combination of feed tables pivoted at the back, and having lifting mechanism to raise and lower the front to present the metal to higher or lower rolls of the same set, furnished with positively actuated feed rolls, and means for moving the tables laterally from one set of rolls to another, "substantially as set forth," is not entitled to a broad construction, as embodying the first mechanism for the complete mechanical rolling of heavy pieces. This was accomplished by machines of the prior art, and especially by those shown in the Slade patent of 1879, and the Saylor patent of 1885; the combination of the latter differing from that of the claim in question only in that the tables are lifted in a horizontal position, instead of being pivoted. Such feature, however, was also old in the art, and its substitution for the horizontal tables of such prior patents did not involve invention; and said claim 1 must be limited to the specific means shown by the specification for laterally shifting the carriage and roller frame, and the devices for inclining said roller frame on its pivot. As so construed, the claim *held* not infringed.

Appeal from the Circuit Court of the United States for the Western District of Pennsylvania.

In Equity.   For opinion below, see 118 Fed. 579.

John R. Bennett, for appellant.

J. N. Cooke and James I. Kay, for appellees.

Before ACHESON, DALLAS, and GRAY, Circuit Judges.

GRAY, Circuit Judge.   This is an appeal from the decree of the Circuit Court of the United States for the Western District of Pennsylvania, which sustains the patentability of the combination covered by the first claim of the United States letters patent No. 345,953, issued to Brislin and Vinnac, July 20, 1886, for "feeding mechanism for rolling mills," and finds the defendant below, the appellant here, to have infringed the same.   As to the two other claims of the patent in suit, the bill was dismissed, on the ground of noninfringement of the second, and that the third was not involved in the litigation.   The bill likewise was dismissed as to a charge of infringement of the claims of letters patent No. 352,748, issued to Hanley and Richey, November 16, 1886, for "feed table for rolling mills."   We are only concerned, therefore, with the consideration of the first claim of the Brislin and Vinnac patent.

The invention claimed in the patent relates to the art of the mechanical rolling of iron and steel, the process of which is thus described in the specifications:

"In the process of rolling iron it is necessary to elevate the iron so that it will pass through between the upper and middle rolls when a 'three-high' mill is used, and in case of a 'two-high' mill it is necessary to pass the iron over the top of the upper roll in the process of rolling; and in moving the iron from one groove to the other, and from one set of rolls to another set, it is

necessary to move the iron bodily sidewise. In heavy rolling the labor attendant upon elevating the heated iron and moving it laterally for the several passes required in the process of rolling is very laborious, and the difficulty attendant upon said manipulation causes a loss of time, and at the same time a loss of heat, thereby causing the iron to be more difficult to roll, and the stiffening of the iron by the cooling process due to said loss of time often results in the breaking of the mechanism connected therewith. Mechanical contrivances have been constructed and used for the purpose of vertical lift of the heated iron in the operation of rolling it. Our invention has for its object not only the vertical lifting of the heated iron, but also the lateral movement of it in the process of rolling; and our invention consists in a lifting mechanism and laterally moving mechanism combined with rolls of a rolling mill for the vertical lifting and lateral movements of ,the heated iron in the operation of rolling it."

The first claim of the patent (which alone is in contention here) is as follows:

"(1) The combination, in a rolling mill, of rolls, a carriage, a roller frame therefor for feeding to the rolls and pivoted at its outer end, means for laterally shifting said carriage and roller frame, and devices for inclining said roller frame on its pivot, so as to vary the feed of the latter to the rolls, substantially as set forth."

It will thus be seen that the invention claimed in·the patent in suit is, speaking generally, for such a combination of elements as would mechanically present to the rolls of a rolling mill, or receive therefrom, the iron or steel to be rolled, on tables furnished with feeding rolls, pivoted at their outer ends, and capable of being mechanically raised in a vertical direction at their inner ends, so as to present the metal which had gone through one pass of rolls for further reduction through an upper or higher pass, and of laterally moving said tables from one set of rolls to another, or from one groove to another of the same rolls. This is claimed, in the arguments and contentions of the appellees, to be what is called "complete mechanical rolling," and to have been first accomplished by the invention described in the first claim of the patent in suit. This broad construction of the first claim has been sustained by the learned judge of the court below, and upon it rests the decree declaring infringement.

The history of the prior art, so far as the case before us is concerned, and as shown in the record, may be briefly stated. It is undoubtedly true that, in the prior art, hand feeding ·to the rolls was at one time universal, and that various devices for lifting billets and bars, by hooks attached to pulleys for heavy work, were in use before mechanical rolling was practiced. We do not, however, find that the invention of the patent in suit made the first advance from manual rolling to complete mechanical rolling. It no doubt made an advance in mechanical rolling, which is quite a different thing from an advance to mechanical rolling.

The French patent to Sauvage, No. 32,389, of May 27, 1858, sets forth a single stand of three-high rolls, on each side of which, the specifications state,

"A lifting table is disposed to receive the piece coming from the heating furnace, which the heater or his helper places upon the aforesaid table on the side nearer to the train. The head roller then takes it and pushes it between the cylinders. The catcher placed behind the train on the opposite side from

the head roller, takes the piece when it comes from the rolls, draws it upon the lifting table, causes the latter to move upward, and in same time engages the piece into the rolls; the head roller on this side performs the same operation until the piece is completed."

As appears by the drawings and specifications, the "Sauvage" lifting table is pivoted at its outer end and is vertically movable at its inner end, so as to permit of its inner end being raised and lowered, in order that it may deliver the metal to and from all the rolls of a three-high stand. Of this apparatus, the defendant's expert, Laureau, says:

"I have read the French patent you refer to and I believe I understand it. It relates to a certain arrangement of rolling mills which permits to roll plates at one heat. The train is a three-high train, the rolls of which can be moved vertically so as to vary the distance between them. In order to facilitate the handling of the plates, lifting tables are placed at the front and back of the rolls. These tables are pivoted at their outer end and are capable of vertical motion at their inner end. This vertical motion is communicated to them by steam cylinders placed directly above the inner ends and connected to them by means of a yoke. The operation is very simple and easily understood. The piece being placed on the front table passes through rolls, it is caught at the back by the back table, which, by means of the cylinder placed above it, raises the piece to the level of the upper rolls. The piece then passes back, is caught by the front table which has been raised and lowered again to the lower rolls, etc. It will, therefore, be seen that the feed table apparatus consists essentially of a frame having loose rollers upon it and pivoted at its outer ends, the inner end being raised up and down by a cylinder placed directly above it. As compared with the Brislin and Vinniac patent, this apparatus shows a feed table pivoted at its outer end and capable of a vertical motion at its inner end."

So that, the device of the "Sauvage" patent, so far as a single stand of high rolls is concerned, presents all the advantages of complete mechanical rolling. This is not controverted in the opinion of the learned judge of the court below. The "Sauvage" apparatus only lacks means for laterally shifting the table, consisting of the frame with the loose rollers, pivoted at its outer end and capable of being lifted at its inner end, so that it might serve two or more stands of rolls placed side by side. We will not pause here to consider whether the thought or idea of laterally moving this device for the purpose stated, was one worthy of being called a patentable invention, apart from the specific mechanical means devised for such lateral movement. We will only remark, in passing, that the suggestion of the moving of such a table on a carriage or truck, laterally, so as to bring the same successively in front of stands of rolls placed side by side, does not seem to us to so involve patentable invention as to be entitled to the monopoly accorded to such invention by the patent law. The mounting of such a table upon the truck moved upon rails in front of the rollers, would violate such a monopoly were it granted. The traveling crane comes within its functional principle. The particular mechanical means or device by which such lateral movement is made, of course may be of such a character as to deserve the protection of a patent. We are not surprised, therefore, to find that in the "Alleyne" (British) patent of April 4, 1861, is described a rolling mill of several stands of "two-high" rolls, and that the object of one part of the invention of the patent is thus described:

"A second part of my invention has for its object the obviating of the difficulty attendant on transferring large masses of iron at a very high temperature from one groove in the rolls of a rolling mill to the next groove, or from one set of rolls to another, as is the case in rolling plates which may also be without grooves. For this purpose I construct a tramway on either side of the rolling mill just in the front of and behind the rolls, running parallel with the same, and either sunk in the floor of the mill or level with the same, or at the same inclination as the floor of the mill. Upon these tramways I place travelers capable of running along on both sides of the rolls in a direction parallel with the same, and actuated either by steam or other power. Thus in one arrangement I prefer to make the level of the top of these travelers on the same level or inclination as the floor of the mill, and I fix transversely upon them rails corresponding with other rails placed upon the mill floor, and leading at a certain incline down from the heating furnaces to the rolling mills, such as have already been made use of, which do not form part of my invention. Upon these rails I place other carriages or trucks which receive the heated iron as it comes out of the furnace, and which are then run down the incline and onto the traveler; the heated iron is then received by a groove in the rolls and run through the same, or it is run through plain rolls as in ordinary plate rolls. On arriving on the other side of the rolls, the iron is received upon the other traveler, which is then moved laterally till the iron is before the next groove or before the next pair of rolls, or the traveler is adjusted by being moved to a very slight extent, so as to get the iron into the rolls, the other traveler being allowed to stand still, and the iron is then run back through the rolls on to the first-named traveler, the motion of the rolls having been reversed; or the iron may be run backwards and forwards through the same groove or plain rolls several times, the rolls being made to approach at each operation. Sometimes I have only such before-mentioned traveler and tramway on one side of the rolls, and on the other side I fix two sets of rollers at certain distances along the rolls, one set being placed with the axes parallel with that of the rolls, while axes of the other set are at right angles to the axes of the rolls."

This patent also clearly describes a vertically moving table, placed on a laterally moving carriage, so that the metal may be passed through one set of rolls and then returned through a higher set. As in the "Sauvage" patent, it is especially claimed in the "Alleyne" patent, that the devices described are especially adapted for the rolling of large masses of metal, the specifications of the "Alleyne" patent opening as follows:—

"My invention has for its object the facilitating of the manufacture of large masses of iron into plates or bars, tee and angle iron, beam or joist iron, * * * by the operation of rolling in rolling mills."

The "Alleyne" apparatus, therefore, combines both a laterally moving mechanism and a vertically moving or lifting mechanism, the lifting mechanism differing from that of the patent in suit, only in that the table is raised bodily and horizontally, instead of the free end next the rollers only being raised on the fulcrum of the pivoted further end.

We now come to a stage in the development of the art of complete mechanical rolling, from experience in which seems to have been developed the alleged infringing device of the appellant. This stage of development is illustrated by feed roller tables of the Fritz and Wellman types, used by defendant in its mills some years prior to 1892. The "Fritz" type is embodied in a patent of December 10, 1872, in which the patentee states that he has "invented certain improvements in rolling mills for rolling steel and iron in every form," of which the following is a specification:

"The first part of my invention relates to feeding rollers, driven by friction or otherwise, on a movable table, which is raised and lowered by hydraulic or other power and which carries the metal to be rolled, said driven rollers feeding the metal into the rolling mill on one side, taking it out on the other side, and drawing it clear from the mill rolls and guides, and then returning it in the same manner, thus passing the metal back and forth as the tables are elevated and lowered until the process of reduction is completed, said feeding rollers being combined with and moved by a shaft-operating gear and friction wheels, which are supported by and attached to a yoke suspended in such manner that the friction wheels connected with it may be brought in contact with or detached from a friction wheel operating the feed rollers, by a slight movement of levers in front and rear of the machine."

It will thus be seen that the feed rollers are positively driven by a shaft and operating gear, and their rotation is reversible, or, as stated by the patentee, "it will be observed that the combination of the movable table with the driven rollers is found in my invention, whether said driven rollers are reversed or driven in one direction only." The second part of the "Fritz" invention relates to a turning and shifting mechanism, by which the piece to be rolled could be turned upon the movable table, so as to be rolled both sidewise and edgewise. So far as there was necessity for only one stand of rolls, complete mechanical rolling could be accomplished by the "Fritz" device. The roller table, to be sure, was lifted vertically and horizontally, but the function of such movable table and the positively driven rollers was the same as that of the pivoted table and rollers of the patent in suit. The tables of the "Fritz" patent were raised and lowered by hydraulic cylinders from beneath, but it is stated in the specifications that they may be arranged and operated in any other suitable manner. There was no lateral movement of these tables, which, being of the width of the rolls, were sufficient to serve the several passes of the single stand of rolls. The weight and length of the pieces to be raised on these tables was a question of more or less power in the hydraulic cylinders, or other lifting means, and of the length of the tables.

The other type in use in defendant's mills, during the period testified to, that is, between 1885 and 1892, was that of the "Wellman" patent, of May 15, 1883. Defendant's expert, Kennedy, testifies that, during the time stated,

"The plate mill was equipped with 'Wellman' tilting tables, which were tables pivoted a short distance from their rear end, having the ends next the rolls arranged to rise and fall in unison, while the rollers were arranged to be run in either direction, so that the plate could be passed in at one side under the metal roll, lifted up at the other side, and started back above the metal roll; this operation continuing until the plate was rolled down to the required thickness."

The learned judge of the court below gives the following description of the device of the "Wellman" patent:

"On either side of a stand of three-high rolls Wellman employs a table pivotally supported at its outer end on a stationary foundation. This construction, of course, leaves the inner end free to be raised or lowered to either roll pass. In the bed of the table are rollers adapted to be positively revolved and reversed when the inner end of the table was at either angle. The inner ends of the table are raised and lowered simultaneously by a hydraulic cylinder placed on one side of the rolls. The feed rollers are

actuated by a single reversible steam engine. Wellman adopts the general prior teaching of the art—viz., the indifference of the mere modes of power application to his rolling agents. Thus, in speaking of driving his reversible feed rollers, he says:—'This is accomplished by means of suitable lines of shafting, with gearings which are preferably driven by means of reversible engine F, but they may be driven by means of any suitable driving power.' He also showed the application from a fixed point of positively propelling power to feed rollers adapted to feed at two different planes. But the important feature was the return to the use of the pivoted table which proved an essential element, in combination, in the subsequent advance in heavy rolling. The importance of the pivoted table is that by releasing the inner end of the table we are enabled to elevate the metal to an upper pass without raising either the whole bulk of the metal or the whole weight of the roller frame or table."

The "Wellman" tables did not travel laterally, a fact explained by the appellant's expert, Laureau, as follows:

"In the Wellman table which I saw in use, the material produced was plate steel, such as tank and boiler plate. In the production of such material, ingots or blooms of the proper size and weight are rolled down to their finished size in one stand of rolls only, and there is no necessity to transfer them from one stand to another. In fact the nature of the product itself is such that it must be finished as quickly as possible because as it becomes thin and spreads out, it radiates heat very fast, and it must be passed through the rolls as rapidly as possible."

Prior to the issue of the "Wellman" patent, to wit, September 27, 1881, the "Lewis" patent was issued. This patent describes a mill in which, on either side of several sets of "two-high" stands of rolls, tables, on which are feed rollers positively driven, are mounted on wheels running upon tracks, parallel with the axis of the rolls, and adapted to carry material to be rolled from one set of rolls to another, alongside thereof. "The feed rollers are actuated when opposite the roll pass by gearing in engagement with the main shaft which conveys power to the rolls." These roller tables were stationary, and therefore not adapted to raising the material to be rolled from a lower to a higher roll pass. The court below, in its opinion, admits that a complete mechanical rolling could be accomplished by the device of this patent.

Prior to this, the "Slade" patent of December 23, 1879, shows a "three-high" mill, equipped with a laterally moving and vertically lifting feeding mechanism, for the complete mechanical rolling of a heavy piece of metal. The feed roller table is here lifted bodily and horizontally. We think that appellant's counsel has pertinently asked, in his argument,

"How could invention have been involved in simply substituting the 'Sauvage' or 'Wellman' pivoted feed roller table for the horizontally movable feed roller table of the 'Slade' patent? Or, to put it in another form, to simply pivot the feed roller table of the 'Slade' patent at its outer end and apply lifting mechanism to its inner end, as Sauvage had done, and as Wellman had done?"

This brings us to the "Saylor" patent of June 30, 1885. In the device of that patent, there are feed tables equipped with positively driven feed rollers, which are raised and lowered vertically and horizontally. These tables are mounted upon carriages run upon tracks

parallel to the axis of the rolls, and are operated on both sides of the rolls. We have here the combination of a feed roller table raised and lowered vertically, and means of moving the same laterally, by which the metal to be rolled can be raised from lower to higher rolls in the same set, and moved laterally from one groove of the same rolls to another, or to another set or sets of rolls placed side by side with the first, and in the same relation to the line of lateral movement. Complete mechanical rolling is here accomplished by a combination not differing from that of the patent in suit, except that the feed roller table is lifted horizontally instead of being pivoted at its outer end with the inner end free and capable of being lifted. The "Saylor" mechanism differs from the "Slade," in that it employs positively driven feed rollers, precisely as those employed by Fritz and Wellman and by Brislin and Vinnac.

Mr. Laureau, appellant's expert, uses this language in regard to the "Saylor" patent, which is quoted without adverse criticism by the learned judge of the court below:

"The relations of the Saylor device to claims 1 and 2 of the Brislin and Vinnac patent is very close, and with the single exception that the Saylor tables are not pivoted at their outer ends, the claims alluded to are an exact description of the Saylor table. There is the same combination of rolls, carriages, roller frame, means for laterally shifting carriages and devices for allowing the roller frame to deliver metal to both upper and lower passes. * * * The Saylor device is, therefore, substantially the same as the Brislin and Vinnac device."

This brief statement of the prior art makes clear that all the elements of the combination of the first claim of the patent in suit are old, except the specific means for laterally shifting the carriage and roller frame, and devices for inclining said roller frame on its pivot. The learned judge of the court below says:

"Conceding that all the elements of Brislin and Vinnac were in themselves old, yet it must be conceded that they were the first to take the separate individual elements of advance in the rolling art, and so combine them as to accomplish continuous, complete mechanical heavy rolling, and to make possible a new product—to wit, a machine rolled heavy beam."

We have already seen, however, that the conclusion of the learned judge is too sweeping, and that complete mechanical rolling had been admittedly accomplished by the methods of several patents prior to the patent in suit. The position of the appellees, as sustained by the court below, comes, then, to this, that the combination described in the first claim of the patent in suit, inasmuch as it provides for the lateral movement of a feed roller table pivoted at its outer end, involves such invention as to entitle it to the monopoly of a patent. It is this broad construction of the first claim of the patent in suit that we think cannot be sustained, in view of the prior art. The complainant below cannot claim all lateral movement of a feed roller table capable of vertical lifting, because more than one previous patent has described a device for accomplishing this result, and the court below has admitted that complete mechanical rolling has been accomplished thereby. But, as we have already said, it could hardly involve invention, to carry laterally a feed roller table capable of being lifted only at its inner end, and

pivoted at its outer end, instead of a table only capable of being raised horizontally. That the pivoted table, whether stationary or carried laterally, is a better contrivance and accomplishes better results in mechanical rolling, cannot alter our judgment in this respect. Both forms of a vertically lifted roller table were in use prior to the patent in suit. One of them had been mounted on a laterally moving carriage, to serve multiple rolls. To substitute the other on the moving carriage, was clearly not invention within the meaning of the patent law. It merely involved good judgment and ordinary mechanical experience.

If the court below were justified in placing upon the first claim of the patent in suit the broad construction which it did, and which we have just been considering, the device of the defendant below clearly infringed the same, since it exhibits the very feature of the combination set forth in the first claim of the patent in suit, upon which, thus broadly construed, invention is predicated, to wit, the lateral movement of a pivoted feed roller table,—discarding here for the moment any consideration of the question as to whether defendant's table is pivoted at the outer end, within the meaning of the first claim. Dissenting, however, as we do, from this broad construction of the patent in suit, and for the reasons above stated, we are compelled to consider the question of infringement, in view of a narrower scope to be given to the claim in question. The combination described in that claim, and as explained in the specifications to which it refers, if a patentable invention at all, is a specific unitary organization, to which the particular means described for laterally moving feed roller tables, pivoted at their outer end, and actuated synchronously on both sides of the rolls by power transmitted through or from the rolls themselves, is necessary. In other words, we do not think that the first claim covers all means and devices for laterally shifting the carriage and tilting the feed roller frame at its inner end. Limited as above stated, appellant's structure does not infringe the specific organization covered by the first claim of the patent in suit. The words "substantially as set forth," with which the claim concludes, cannot here be ignored, and the language of the Supreme Court is in this case especially applicable:—

"Where the claim immediately follows the description of the invention, it may be construed in connection with the explanation contained in the specification, and where it contains words referring back to the specification, it cannot properly be construed in any other way."

In appellant's mechanism, the carriages on the opposite sides of the rolls do not operate simultaneously through a set of connecting instrumentalities. There is no connection or combination whatsoever between the rolls and the carriage, and the feed roller frame pivoted thereon, neither of which are driven by power derived from the rolls. The means for laterally shifting the carriage and feed roller frame, and the devices for inclining the roller frame, are not the same as those of the patent in suit. In appellant's table, there was a separate steam engine located on each carriage, whereby the carriage was shifted laterally and the feed rolls driven, and a separate hydraulic cylinder on each carriage, by which the roller frames were inclined. There was no

connection through suitable shafting and gearing, as in the device of the patent in suit, between the rolls and the carriage, or the roller frame and feed rolls. Again, the claim of the patent in suit, as well as the description contained in the specifications, requires a feed roller table, pivoted at its outer end. Interpreted reasonably, this, of course, does not mean the very tip of the outer end, but the functional outer end for the purpose of pivoting. The appellant's feed roller table, however, is not pivoted at its outer end, but, as shown by the drawings exhibited to the court, at a point 22 feet 4 inches from the outer end of a table 57 feet 4 inches long; in other words, about two-fifths of its length from the outer end. The pivoting of appellant's table not far from its center, was clearly shown to have been for a useful purpose, and was not a mere evasion of the structure of the patent in suit. Much longer beams could be more easily rolled onto such a table, and better supported and handled while delivering them to the passes of the rolls. We do not, however, think it absolutely necessary to differentiate the pivoting of appellant's table from that of the patent in suit. The view here taken of the restrictions to be placed upon the broad interpretation given by the court below to the first claim of the patent in suit, finds support in the disclosures of the file wrapper. The correspondence between the attorneys for the patent and the examiner's office, resulted in limitations of the first claim, which we are justified in calling enforced. These limitations relate to the pivotal point of the roller frame, the means for laterally shifting the carriage, for the roller frame, and devices for inclining the roller frame on its pivot. The letter of the examiner, of March 20, 1886, required that these three things should be set forth, and in obedience to that requirement, they were set forth and incorporated in the claims. The broader claims of the first application were abandoned, and the claims finally adopted cannot be construed as coextensive therewith.

It is not contended, either by complainants' experts or in the opinion of the court below, that the means and devices of the first claim of the patent in suit are specifically found in appellant's mechanism. The decree of infringement is founded only on the basis of the broad construction given by the court below to the first claim, which is made to cover, in the language of the court, "the coupling of a pivoted table and a movable carriage." As we cannot sanction the giving of such a scope to this claim, there is no difficulty in declaring noninfringement of the first claim of the patent in suit, as restricted to the particular means and devices set forth in the specifications of the patent.

The decree of the court below must, therefore, for the reasons above stated, be reversed.