### LIBERTY MFG. CO. v. AMERICAN BREWING CO.

(Circuit Court, W. D. Pennsylvania. September 9, 1907.)

#### No. 47.

PATENTS—INFRINGEMENT—TUBE CLEANER.

    The Elliott patent, No. 641,092, for a rotary boiler tube cleaner, was not anticipated, and discloses invention; also *held* valid as against the claim of prior use, and infringed.

In Equity. On final hearing.

Bakewell & Byrnes, for complainant.
H. A. Toulmin and Miller & Reamer, for respondent.

BUFFINGTON, Circuit Judge. This bill in equity brought by the Liberty Manufacturing Company against the American Brewing Company charges infringement of claims 1, 2, 5, and 6 of patent No. 641,092, issued January 9, 1900, to W. S. Elliott for a boiler tube cleaner. The respondent is a mere user, and the case is defended by the maker of the device in question, the Lagonda Manufacturing Company.

Prior to the patent in question, the use of water tube boilers had developed a serious trouble in the formation of a stone-like crust on

the inner surface of the tubes, due to the action of heat on the mineral salts contained in the water. This layer reduced steam space and capacity, and increased fuel consumption. So serious was this trouble owing to the difficulty in removing the crust that the Stirling Company, one of the largest makers of such boilers, was threatened with disuse of their boilers on that account; its tubes, owing to end curves, being especially hard to clean. Elliott, the patentee, who had charge of the Pittsburgh agency of that company, being aware of this trouble, set about to solve it, and as early as February 12, 1897, drew a sketch which disclosed the device subsequently embodied in the patent in suit. With his device is used a turbine, of smaller diameter than the tube to be cleaned, which is attached to a hose. To the shaft of the turbine, which shaft may be provided with a universal joint to allow the device to follow the end curvature of tubes, is attached a head which constitutes the Elliott device. This head is provided with four longitudinally extending arms pivoted at their rear ends in inset openings at four equidistant points on the periphery of the head. A set of two arms of longer length and a set of two of shorter length are mounted at right angles. On the forward, free end of each arm a toothed movable cutting wheel is mounted on a shaft extending lengthwise the arm. When the turbine shaft is rotated at high speed, the forward extending arms on the head by centrifugal force fly outward bring the cutters in contact with the scale, and deliver a rapid succession of blows of both a revolving and striking character. This blow is variously described in the proofs as a "sidewise" or "swiping" blow, and the process is styled a "picking" action. By these blows the crust is broken into small pieces, which are washed out ahead of the device by the exhaust of the turbine. The claims in controversy are as follows:

"A rotary tube-cleaner having freely swinging arms, the planes of movement of the arms being longitudinal of the axis of the tool, and cutting-disks secured to the arms and lying in planes transverse to the axes of said arms; substantially as described."

"2. A rotary tube-cleaner, having freely swinging arms moving in planes longitudinal of the axis of the tool, each arm carrying a series of toothed disks lying in planes transverse to the axes of said arms; substantially as described."

"5. A rotary tube-cleaner, having freely swinging arms moving in planes longitudinal of the axis of the tool, said arms carrying cutting disks lying in planes transverse to the axes of the arms, the cutters upon one arm being in advance of those upon the other; substantially as described."

"6. A rotary tube-cleaner, having pivoted thereto freely swinging arms with free outer ends, said arms moving in planes longitudinal of the axes of the tool, and cutting-disks rotably mounted upon the arms near their outer ends and lying in planes transverse of said arms; substantially as described."

The device was successful, supplied a recognized need in boiler practice, and met with prompt commercial success. It is sought to invalidate the patent on the ground it was a joint invention of Elliott and Faber. The uncontradicted evidence afforded by Elliott's sketch of February, 1897, however, carries the conception of the device by Elliott back of any alleged suggestion by Faber. Much testimony has been taken. Narrowed down, it discloses no patent which so resembles Elliott's device as to warrant present discussion. It is sought, however, to show two prior uses, viz., that of Bradley and those of Weinland.

As to the former, we are clear that the device, if a subsequent use, would not infringe Elliott's claims, and as a prior use did not anticipate. While Bradley had forward pointed arms, yet they were provided with stationary slanting cutting knives which served to scrape the tube. It lacked the revoluble cutters of the Elliott device. The Bradley device left no impress on the art, and the reason for this we find in the testimony of respondent's witness Kennedy, the manager of the Isabella Furnace where Bradley used the cleaner, who says he "objected to the use of this cutter on the boilers for fear that the cutters being revolved at great speed in the tube would cut the tube. * * * I considered they were cleaning them too well." As to the numerous Weinland devices, we are convinced by the proofs that a clear and satisfactory case of prior use, such as the law requires, is not made out. Indeed, the statements made by Weinland himself in 1901 to Swartz, a friendly witness, in commenting on their conversation and views on the boiler cleaner problem in 1898, are wholly at variance with the contention now made by the respondent. It may be conceded that some of the contended for devices of Weinland were along the line of development which Elliott successfully perfected, but none of them went to the full extent Elliott did, and it required that full extent of development to make the device, such as is now made by the complainant and defending company, a success.

On the whole, we are satisfied that a prior use is not established, either by the proofs or the character of Weinland's devices. The patent being adjudged valid, we are of opinion infringement is established. The main difference between the two devices is in the fact that in the Lagonda device the two sets of arms, instead of being of different lengths pivoted on the same plane. are of the same length, but pivoted from two different planes. This, however, is a mere mechanical alternative, which still serves to answer the element of the fifth claim, which reads: "One arm being in advance of those upon the other."

Let a decree be drawn.