## ELLIOTT CO. v. CLYDE MACH. WORKS CO.

(Circuit Court, N. D. Illinois, E. D. March 8, 1911.)

### No. 30,258.

PATENTS (§ 328*)—INFRINGEMENT—TUBE-CLEANER FOR BOILERS.

The Elliott patent, No. 641,092, for a tube-cleaner for water-tube boilers, *held* not so clearly infringed on the showing made as to warrant the granting of a preliminary injunction.

In Equity. Suit by the Elliott Company against the Clyde Machine Works Company. On motion for preliminary injunction. Motion denied.

Linthicum, Belt & Fuller and Bakewell & Byrnes, for complainant. Offield, Towle, Graves & Offield, for defendant.

KOHLSAAT, Circuit Judge. This cause is now before the court on motion for a preliminary injunction.

The bill alleges infringement of all the claims of patent No. 641,092, granted to W. S. Elliott on January 9, 1900, for a tube-cleaner for removing scales from the interior of the tubes of water-tube boilers. The claims read as follows, viz.:

"1. A rotatory tube-cleaner having freely-swinging arms, the planes of movement of the arms being longitudinal of the axis of the tool, and cutting-disks secured to the arms and lying in planes transverse to the axes of said arms; substantially as described.

"2. A rotatory tube-cleaner, having freely-swinging arms moving in planes longitudinal of the axis of the tool, each arm carrying a series of toothed disks lying in planes transverse to the axes of said arms; substantially as described.

"3. A rotatory tube-cleaner having a head provided with an uninterrupted cross-slot and freely-swinging arms having their ends mounted in the slot and closely adjacent to each other, said arms projecting beyond the head and provided at their free outer ends with cutters; substantially as described.

"4. A rotatory tube-cleaner having a head provided with a plurality of uninterrupted cross-slots arranged at opposing angles, and sets of arms having their pivotal ends mounted in the slots closely adjacent to each other, one set of such arms being in advance of the other; substantially as described.

"5. A rotatory tube-cleaner, having freely-swinging arms moving in planes longitudinal of the axis of the tool, said arms carrying cutting-disks lying in planes transverse to the axes of the arms, the cutters upon one arm being in advance of those upon the other; substantially as described.

"6. A rotatory tube-cleaner, having pivoted thereto freely-swinging arms with free outer ends, said arms moving in planes longitudinal of the axes of the tool, and cutting-disks rotatably mounted upon the arms near their outer ends and lying in planes transverse of said arms; substantially as described."

The specification (column 1, p. 1) states that the device "is particularly designed to be used in combination with a turbine-wheel motor or other similar fluid-actuated prime mover," and adds (column 2, p. 1, and column 1, p. 2), "any other operating mechanism may be substituted for the turbine wheel, and, if desired, the tool may be operated by hand through proper shaft connections."

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

The bill alleges (page 3) that claims 1, 2, 5, and 6 were sustained by Judge Buffington in Liberty Mfg. Co. v. American Brewing Co. (C. C.) 155 Fed. 900, hereinafter termed the "Brewery Case." A reference to that authority would seem to indicate that all the claims were sustained, but only claims 1, 2, 5, and 6 held to be infringed. The issues mainly involved in that suit, as stated by the opinion, were: (1) Was Elliott the inventor, or was it the joint invention of Elliott and another; (2) certain prior uses. The court says, however:

"Much testimony has been taken. Narrowed down, it discloses no patent which so resembles Elliott's device as to warrant present discussion."

Both points as to joint invention and prior use were overruled. A large number of patents from the prior art were introduced in that record. But few seem to have been discussed. However, the suit seems to have been fairly litigated, and the adjudication of validity is deemed to be entitled to the consideration required by the courts for the purposes of injunctional relief in limine as to validity only.

It is apparent from an examination of the prior art that Elliott was by no means a pioneer in the art. The prior patents are so numerous and close that it requires a careful scrutiny thereof in order to ascertain just how broad a construction should be given to the patent in suit.

The Howlett tubular boiler cleaner of patent No. 598,249, granted February 1, 1898, discloses a circular, cone-shaped head 35 at the end, of a lever, 32, projecting beyond the end of the block, 12, and having considerable play through the outwardly flaring opening, 29. By means of the steam-operated piston, 25, the lever and head are made to rapidly strike the inner walls of the boiler pipe. They are revolved by means of a hand-operated wheel, 48, thus striking the whole inner surface of the boiler pipe. The scale is removed by the exhaust steam. In this device centrifugal action is not employed.

The Rast patent, No. 386,848, dated July 31, 1888, covers a hand-operated device for cleaning boiler tubes. The carrying block is provided with slots which receive the arms that carry two serrated and one plain revolving cutters, having inclined teeth, and which extend beyond the block. These arms and the cutters are adjustable to different diameter pipes by means of a rod and disk. Apparently centrifugal force would throw these cutters out to a limited degree. Being operated by hand, it may be doubted whether sufficient velocity could be attained for that purpose. The idea of the patent is that they shall be held in contact with the walls to be cleaned by means of manual adjustment. Provision is made for the prevention of injury to the wall of the boiler pipe. The operation is that of grinding rather than hammering.

The device of the patent to Krueger, No. 597,421, is especially designed for use with the curved tubes of the Stirling boiler; this also being the particular advantage claimed by the patent in suit. The arms carrying the cutters are under spring tension. There seems to be no doubt but that these would, when subjected to rapid revolution, yield to centrifugal force, though they may not be termed the free swinging and hammering cutting disks of the patent in suit.

In patent No. 595,159, granted to W. D. Forsyth on December 7, 1897, and in the several Forsyth and Bell patents, is shown a means for burnishing the inside of pipes which operates by centrifugal force. The cutters are mounted upon pivoted arms which readily swing out against the walls of the boiler tube or other pipe. These cutters are free swinging and have a hammering effect upon the inside of the tube; but, being so arranged that they swing at practically right angles to the carrying head, their stroke is not so long, and consequently not so heavy or effective as that of the patent in suit. So far as this device goes, it suggests the means and object better covered by Elliott.

Bradley's patent, No. 608,418, granted August 21, 1898, shows a turbine-operated boiler tube cleaner having four freely swinging arms moving longitudinally of the head. The arms carry cutters or knives and are thrown out centrifugally against the walls of the boiler tubes. The specification says various forms of knives or cutters may be employed. It seems clear that these swinging arms must have a hammering or swiping impact upon the inner periphery of the tube. The court in the Brewery Case notes the difference between Bradley's cutters and Elliott's revoluble cutters.

The foregoing, all of which, except the Howlett patent, No. 598,-249, seem to have been set up in the American Brewing Co. Case, supra, suffice to show fairly well the condition of the prior art. The record does not disclose just what the infringing device in that case consisted of. Nor does it appear whether complainant relied upon its original or a modified form of its cleaner, which latter it seems to rest upon here, while defendant's expert Gillson identifies the cleaner of the patent. There appears to be a considerable departure from the drawings in the construction of the modified form. The carrying arms of the latter are set in much larger slot guides than those disclosed in the drawings, so much so that the head may not be described as a skeleton head, as in the patent, and it can hardly be said of the cutter arms that they now have a hammering effect or act with a sidewise or swiping blow, as described in the Brewery Case, or a rapid succession of blows. It employs no slots cut clear through the head. The contrast between the action of Gillson, Exhibit B (the cleaner of the drawings), and that of the modified form in this respect, is very marked. The whole principle of the freely-swinging arms moving "longitudinal of the axis of the tool" seems to have been clearly outlined in the Bradley patent. As before stated, the court in the Brewery Case found the difference between the two to consist mainly in the formation of the cutting devices.

It is apparent that whatever of invention there is in the patent in suit must be narrow. In paper 10 of the file wrapper the examiner indicates that any claim allowed must be specific. The cutters work in different sections; that is, one pair in advance of the other. This is also true of the Forsyth patent. Rotably mounted cutting disks are also old in the art. These also appear in the Forsyth devices. The patentee disavows any intention of claiming the disclosures of the Schumandt, Rast, and Forsyth & Bell patents, and says none of these

show his invention. It is not evident how his statement in regard to these patents affects the construction to be placed on the claims in suit. To the eye defendant's cleaner and the modified form of the complainant's cleaner are almost identical, the only observable difference being in the length of the cutter-bearing arms, which in the alleged infringing device are shorter than those in suit. As a matter of fact, however, defendant's cutter-carrying arms are locked together by a series of interconnecting lugs, so that they move in unison, all four at once, making allowance for a small amount of play. Comparing the latter with the drawings of the patent in suit, the former seem to lack the free swinging features of the latter. The play of the arms is curtailed by the long slots, the four-in-hand harnessing thereof, and the difference in diameter of the carrying heads of the two. These features seem to set at naught the underlying idea of Elliott's invention, viz., the long, lightly guided, swinging, cutter-carrying arms, with their hammering and swiping blows. There is more grinding in the operation of defendant's cleaner than hammering or swiping. It seems to more closely resemble Forsyth & Bell than Elliott's, so far as this record discloses.

I am unable to say upon this record that defendant so clearly infringes as to warrant the issuance of an injunction in limine. The delay shown in commencing that suit would hardly justify the court in treating it as a waiver by complainant of its rights; but it may be considered in determining the question of emergency.

All things considered, a preliminary injunction should not be granted at this time, and the motion is denied.