ELLIOTT CO. v. ROBERTSON.

(Circuit Court of Appeals, Third Circuit.    January 28, 1916.)

No. 1950.

1. PATENTS 〈◎〉328—VALIDITY AND INFRINGEMENT—ROTARY AIR MOTOR.
    The Elliott patent, No. 1,045,134, for a rotary air motor, for operating boiler tube cleaners, the essential feature of which is a vent to the atmospheric air to allow the escape of compressed air, which accumulated at the rear end of the shaft and checked its speed, discloses invention and is valid.    The Elliott, Mills & Holt patent, No. 1,019,771, and the Mills & Conn, No. 1,053,055, for minor improvements thereon, by changing the direction of the vent and in introducing a lubricant into the motor fluid, are void for lack of invention.    The first-named patent also *held* infringed.

2. PATENTS 〈◎〉328—VALIDITY AND INFRINGEMENT—TURBINE.
    The Elliott & Faber patent, No. 983,032, for a turbine, for operating a boiler tube cleaner, *held* valid and infringed.

Appeal from the District Court, of the United States for the Western District of Pennsylvania; Charles P. Orr, Judge.

Suit in equity by the Elliott Company against John F. Robertson, trading as the John F. Robertson Company.    Decree for defendant, and complainant appeals, with cross-appeal by defendant.    Reversed in part.

For opinion below, see 219 Fed. 899.

Bakewell & Byrnes, Clarence P. Byrnes, and G. H. Parmelee, all of Pittsburgh, Pa., for appellant and cross-appellee.

Gifford & Bull, J. Edgar Bull, and Chas. S. Jones, all of New York City, and Synnestvedt, Bradley, Lechner & Fowkes, of Philadelphia, Pa., for appellee and cross-appellant.

Before BUFFINGTON, McPHERSON, and WOOLLEY, Circuit Judges.

BUFFINGTON, Circuit Judge.    In the court below the Elliott Company, the owner of six separate patents hereinafter referred to, filed a bill against John F. Robertson, trading as John F. Robertson Company, wherein infringement of said patents was charged in the sale of certain rotary air motors for cleaning boiler tubes.    Two of the patents were subsequently withdrawn, and the case proceeded on Nos. 983,032, 1,019,771, 1,045,134, and 1,053,055.    The court below, in an opinion reported at 219 Fed. 899, dismissed the bill on the ground the several claims of such patents were either invalid or not infringed. Thereupon the Elliott Company took this appeal.

[1]  The art here concerned is that of devices for cutting the scale from boiler tubes.    Such devices consist generally of three distinct features: First, an interior motor or turbine; second, a compact motor-inclosing shell; and, third, a scale-cutting exterior attachment actuated by the motor.    The scale-cutting exterior attachment was the subject of litigation in one of the District Courts of this circuit, and a reference to that case (Liberty Mfg. Co. v. American Brewing Co., 155 Fed. 900) avoids a present restatement of that element of the cleaner.

〈◎〉For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

The second element, namely a compact motor-inclosing shell, was the subject-matter involved in another case in this circuit and a reference to the opinion of the lower court (Elliott v. Lagonda Mfg. Co., 222 Fed. 946) will likewise obviate a present restatement of that element. This case involves the remaining element, viz., the motive power of the cleaner. For a long time such motors were water turbines, and such motors were used in the apparatus involved in the cases referred to above. The present case involves motors using air, which have only come into use in this art in the last few years. It was recognized that air motors would be more desirable in cleaner service than water turbines. In that regard the proof is:

"Air motors are advantageous over water motors, because easier to operate; there being no water to contend with, they develop a great deal more power and cost much less to maintain."

The proofs show that the plaintiff began the use of air motors in cleaners in 1906 with the sale of 3 air motor machines, and within three years their business had grown to over 300 per year. When it came, however, to the use of rotary air motors, a serious difficulty was encountered, in that, while such a motor would start off under load at the required high speed, it would soon, for some unaccountable reason, slow down and fail to develop the necessary power. For example, one Van Ormer, in patent No. 969,010, devised the rotary motor hereafter shown. It so attracted the attention of the complainant company that it purchased Van Ormer's patent and began to develop it commercially. In that respect the proof is:

"The first motor that we attempted to build on a commercial scale is that of Van Ormer, No. 969,010, dated August 30, 1910. The first difficulty that we encountered on this motor was that, in putting it on the test ways, it started in at a very high speed, but after running a few seconds the speed began to dwindle, and toward the end of the run of say a minute the speed was very much lower than at the beginning."

This difficulty was overcome by the device shown in patent in suit No. 1,045,134, for a rotary motor, applied for by W. S. Elliott January 20, 1908, and granted November 26, 1912, and illustrated in the herewith Fig. 1:

From this construction it will be seen that 3 is a closed, eccentrically located piston chamber, in which the blade 20 is rotated by compressed air introduced from admission chamber 9. The piston shaft 13 has a front bearing journaled in bushing 14 and a rear bearing journaled

in bushing *15.* This rear bearing *15,* being reduced in size, thrust shoulders *16* at one end and corresponding, but unnumbered, thrust shoulders at the other end, prevent endwise thrust movements. Turning at this point to the accompanying drawing of Van Ormer's patent, No. 969,010 it will be seen it shows a rotary air motor of the same

*Fig.1.*          No. 969,010.

general type, actuated by compressed air and having a forward and rear bearing for the shaft. Under the strain of operative thrust the rear end of shaft *4* would press on thrust plate *21,* but Van Ormer prevented their contact by what he calls anti-frictional balls. His words are:

"Seated between the rear end of the shaft *4* and the thrust plate *21* in the admission head are a series of anti-friction balls *22,* which also form a thrust bearing for the shaft."

This was the Van Ormer device, which complainant undertook to make commercially, and which, as the proofs show, was unable to maintain its initial speed. In the light of after events, the occult reason for this unaccountable action becomes clear. In interposing these anti-friction balls to receive the end thrust of the shaft and prevent such shaft from contacting with thrust plate *21,* Van Ormer left a narrow space or crevice between the thrust plate and the shaft into which the compressed air from the piston cylinder gradually crept through the rear shaft bearing and there accumulated. The proofs satisfy us that it was this gradually increasing accumulation of compressed air at the end of the shaft which in time reduced the speed of the shaft. When once discovered, the defect was solved in a simple, but effective, manner by Elliott's device in the patent now under review.

Turning to the drawing from that patent, it will be seen that Elliott relieved the pressure of accumulated compressed air at the rear end of the shaft by venting the chamber to atmospheric pressure. In that regard the patent says:

"The piston shaft is of reduced diameter within the rear bushing *15,* forming a thrust shoulder *16* within said bushing, and its inner end has a head or collar *17* which turns in a space or chamber *18* within the head *4.* This space or chamber is formed with a vent opening *19* which leads outwardly from said chamber to the atmosphere. The purpose of this vent opening is to relieve the piston shaft from the effect of any accumulation of air which might otherwise occur in the space or chamber *18* by reason of leakage from the cylinder through the rear bushing *15.*"

Such venting for the purpose indicated was wholly new in the use of rotary air motors in boiler tube cleaners, and was at once recognized as a thing of value in that art. It became the subject of a protracted interference proceeding between Elliott, Darlington, Mills, Conn, and Van Ormer, in which Elliott finally prevailed, and was awarded, inter alia, the claims of broad character found in those here in issue.[1] We find nothing in the art to forestall Elliott's conception, and it seems to us his application was timely after his reduction to practice, which followed his experimentation. We are also of opinion the device was inventive in character. Elliott's contribution was in discovering the existence of an unvented pocket or chamber and the benefits that would accrue from venting it. The art owes to him the creation of a vented chamber at the shaft end, which did away with injurious shaft-bearing, compressed air escape. In that regard Professor Wagner well says:

"This patent is for providing means for relieving the air pressure at the end of the piston shaft in a rotary air motor. Mr. Williams argues that it was merely an act of mechanical skill to make an opening to relieve the air pressure. In view of the fact, however, that no vent was provided in Troxler, McIntosh, or Van Ormer, where a similar accumulation of pressure must have occurred, according to Mr. Williams' own statement, it seems reasonable to suppose that there was some invention in discovering that a pressure did exist at the end of the piston shaft, and did produce detrimental friction, and that a vent hole might be used to relieve this pressure, and thus eliminate the detrimental friction."

We accordingly hold the claims in question are valid.

But while we so regard this patent, we cannot accede to the appellant's contention that patents No. 1,019,771 and No. 1,053,055, which are based upon the vented chamber of No. 1,045,134, are also valid.

[1] The claims awarded were as follows:

"1. In a rotary motor, a piston shaft, a rear bearing for said shaft, an air space adjacent to said bearing, and means for venting said space, substantially as described.

"2. A rotary motor having an air space at the rear end of the piston shaft, and means for venting said space, substantially as described.

"3. In a motor, a piston shaft and an air chamber adjacent to one of the bearings of said shaft, and having a vent opening leading therefrom, substantially as described.

"4. In a motor, a cylinder having a longitudinally extending admission port, ported heads fitted to the ends of the cylinder and detachably secured thereto, said heads having bearings for the motor shaft, and the rear head having an admission chamber therein, the rear head having a vent opening therein communicating with the rear shaft bearing, substantially as described.

"5. A rotary motor having a chamber containing a motor element, a shaft on which said element is mounted, said shaft having front and rear bearings, the front end of the shaft extending beyond the front bearing for attachment to a tool, and the rear bearing terminating and being inclosed within the rear end of the motor, means for admitting working fluid to the cylinder through its rear end, and means for relieving the accumulation of fluid at the rear end of the shaft, substantially as described.

"6. A rotary motor having a fluid supply pipe connected at its rear head, and having a longitudinally extending port leading to the cylinder, a motor shaft having its axis parallel to the axis of the supply pipe, the rear bearing for said shaft being located in front of the supply pipe connection, and there being an air space adjacent to the end of said shaft, substantially as described."

In practice it was found that the venting of this chamber was in one feature objectionable, because the air was vented in the face of the operator. Thereupon the obvious expedient was adopted of venting the chamber into the exhaust, which vented at the forward end of the motor. We find no error in the court below holding the claims which were based on this mechanical change invalid.

So, also, in regard to patent No. 1,053,055, we agree with the court below in holding the claim of this patent was invalid. Carrying lubricants in a motor fluid was a well-recognized method of lubricating motors, and one of the incidental advantages disclosed by the use of Elliott's vented chamber was that, as compressed air passed from the piston chamber to the venting chamber, it oiled the bearing. Under the terms, "means for introducing lubricant into the motor chamber and causing it to mix with the motor fluid, whereby some of the lubricant will be carried to the rear bearing by pressure leakage," the patentee of No. 1,053,055 now sought to monopolize this well-known practice when it came to be applied to a motor with a vented chamber. If sustained, the practical effect of this would be that if one had a license to use Elliott's vented chamber, or, to put it in the words of his first claim, "in a rotary motor, a piston shaft, a rear bearing for said shaft, and air space adjacent to said bearing, and means for venting said space," and desired to lubricate such motor by the well-known method of air and lubricant mixture, he could not do so without paying tribute to another patentee for using that old and well-known method of oiling. We agree with the court below that the claim here in issue, numbered 10, is invalid.

Turning next to the infringement of the patent first discussed, viz., 1,045,134, the defendant's motor is shown in the accompanying drawing, in which number *11* is the front and number *12* the rear bearing, which has no outlet leading from the extreme end. Its construction, therefore, is like Van Ormer, in that the compressed air leaking along the rear shaft bearing would in time work its way back of the crevice between the shaft end and the thrust plate. But such

SECTION THROUGH EXHAUST PORT.

FIG. 1.

rearward passage of the air is prevented by the defendant journaling midway the groove shown in the figure, from which gathering groove passage *21* allows escape of the compressed air to the atmosphere. Since compressed air follows any avenue leading to normal atmosphere, it obviously could not further follow the bearing, so as to accumulate at the rear, but would take the path of least resistance, which it finds in the atmospheric vent. When the rearwardly traveling compressed air reaches the midway vented groove, it is shorn of its harmful power. The defendant's vent simply forestalls, midway of the bearing, what Elliott did at the bearing end. Unless physical laws be suspended it is obvious that if the defendant's vent were closed, and another placed at the rear of the bearing, there would be no functional difference in the substituted vent's power to relieve air compression. The relief of compressed air pressure lies in the fact of outlet, and not in outlet location or form.

The claims of Elliott's patent here in issue are variously described as an "air space adjacent to said bearing," "an air space at the rear end of the piston shaft," "the rear head having a vent opening therein communicating with the rear shaft bearing," "means for relieving the accumulation of fluid at the rear end of the shaft," etc. These several statements show that Elliott's venting disclosure had a wider range of appropriate description than the restriction of it to the one precise form in which he illustrated it and showed it could be practically applied. And, indeed, referring only to the single phrase, "an air space at the rear end of the piston shaft," we may fittingly quote the language of this court in Carnegie Steel Company v. Brislin, 124 Fed. 221, 59 C. C. A. 651, where it is said:

"Again, the claim of the patent in suit, as well as the description contained in the specifications, requires a feed roller table, pivoted at its outer end. Interpreted reasonably, this, of course, does not mean the very tip of the outer end, *but the functional outer end for the purpose of pivoting."

To our mind the defendant's outlet is at the functional end of the rear bearing, because it is there for the functional purpose of preventing objectionable air compression at the end of the shaft—for it is obvious, unless there was mid-shaft venting there would be end-shaft compression. So holding, we must adjudge defendant infringes.

[2] It remains to consider patent No. 983,032, granted to Elliott & Faber for a turbine. That patent we have discussed at length in an opinion of even date in Elliott Company v. Lagonda Company. By reference to such opinion we avoid needless repetition. As there shown, that patent is not for a turbine, or any form of motor, but concerns the second subdivision stated at the outstart of this opinion, viz., the motor-inclosing shell. In that regard the plaintiff's expert properly says:

"The invention is not particularly concerned with the theory of the operation of the motor, but relates to the construction of a casing and the manner of attaching the parts within the casing, so that the severe hammering action to which the machine is subjected may not loosen the connections. Consequently the invention is applicable to any form of motor which may be used to drive a boiler tube cleaner and enters the tube with the cleaner head. The particular feature of the Elliott & Faber invention (No. 983,032) is the

provision of the casing within which aj ported stationary admission member carrying the rear bearing for the rotary element of the motor is located and held in place and securely locked by some means such that, when the locking member is removed, the stationary partition member may be removed from within the casing through the rear end."

It will be noted that the two claims here in issue [2] are directed to the particular features of an exterior casing for a dual bearing motor, the rear bearing of which is locked in the shell and is removable through the rear opening end of the shell when the holding means is unlocked. This feature of the patent was fully discussed in the opinion of even date above referred to. Placing claim 35 on defendant's structure, we find in such structure "a rotary motor having a casing." It has "a revoluble motor element within the casing." It has "a shaft supporting said motor element, and extending forwardly and rearwardly therefrom," and has the feature of "the forwardly projecting portion of the shaft having a bearing within the casing." Turning to the shaft bearing, we find that, like the claim, the defendant also has "a ported admission member carrying a bearing for the rearwardly projecting member of the shaft," and in screw-threaded and locked tie rods, not shown in this figure, but which clamp the two heads together, defendant uses "means whereby said member is normally held against rearward movement." And in this bearing member of defendant's motor, removable through the rear end of the casing when the tie rods are unclamped, it embodied the claim element of "said member being removable rearwardly from within the casing through its open rear end when the securing means are removed."

In accordance with the foregoing views, it follows that, in so far as the decree below dismissed the bill as to patents Nos. 1,019,771 and No. 1,053,055, it is affirmed; that in so far as it dismissed the bill as to patents Nos. 1,045,134 and No. 983,032, it is reversed. The cause will therefore be remanded, with instructions to reinstate the bill as to the two latter patents and to enter a decree adjudging claims 35 and 36 of No. 983,032, and claims 1, 2, 3, 4, 5, 6, 8, 9, 10, 11, and 16 of No. 1,045,134, valid and infringed, and directing an accounting. The costs in this court and the court below will be divided.

[2] "35. A rotary motor having a casing, a revoluble motor element within the casing, a shaft supporting said motor element and extending forwardly and rearwardly therefrom, the forwardly projecting portion of the shaft having a bearing within the casing, a ported admission member carrying a bearing for the rearwardly projecting portion of the shaft, and means whereby said member is normally held against rearward movement, said member being removable rearwardly from within the casing through its open rear end when the securing means are removed, substantially as described.

"36. A rotary motor comprising a casing, a front bearing therein, a ported stationary member closing the rear part of the casing and containing a shaft bearing, said ported member being removable through the rear end of the casing, a shaft journaled in the bearings, a rotary element carried by the shaft and located between the bearings, and clamping means for locking the ported stationary member in place, substantially as described."