## LAGONDA MFG. CO. v. ELLIOTT CO.

(District Court, W. D. Pennsylvania. April 30, 1913.)

### No. 93.

PATENTS (§ 328*)—VALIDITY AND INFRINGEMENT—TURBINE-MOTOR FOR BOILER-TUBE CLEANERS.

The Weinland patent, No. 776,877, for a turbine-motor for boiler-tube cleaners, is void for lack of patentable novelty and utility; also *held* not infringed.

In Equity. Suit by the Lagonda Manufacturing Company against the Elliott Company. On final hearing. Decree for defendant.

Staley & Bowman, of Springfield, Ohio, for plaintiff.

Bakewell & Byrnes, of Pittsburgh, Pa., for defendant.

ORR, District Judge. This patent suit is before us for final hearing. The patent involved is No. 776,877, issued by the United States to Henry F. Weinland, assignor of the plaintiff, dated December 6, 1904, for a turbine-motor for boiler-tube cleaners. The defendant has denied the validity of the patent and has denied infringement.

The desirability of removing scale from boiler tubes has induced many inventors to strive for the perfection of apparatus which will accomplish that end. The method generally adopted consists in the use of a cleaner-head of some sort, often called a cutter-head, which is calculated to scrape or otherwise attack the scale on the inside of the tubes in which it is rapidly revolved. To accomplish the revolutions of the cleaner-heads, motors, sometimes called "turbines," and sometimes called "turbine-motors," are used. These motors have each a casing within which is a turbine-wheel with grooved passages in or near its periphery. In the rear of this wheel is a diaphragm through which there are openings so placed as to direct the motive fluid in the proper way toward the grooved passages in the periphery of the wheel. By the pressure of the fluid through this diaphragm the turbine-wheel is caused to revolve rapidly. In the front of the wheel there is another diaphragm, through which the waste fluid leaves the wheel chamber after its use in forcing the revolutions of the turbine-wheel. The shaft of the turbine-wheel extends forward through the front diaphragm and is connected with the scale-cutter or cleaner-

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

cutter, which revolves, of course, because it is fixed to the shaft. The scale to be removed from the tubes is often extremely hard. The tubes are usually of small diameter. Therefore the cleaning apparatus, necessarily having smaller diameter than the tubes which it enters after the cleaner-head, must have great strength. It is necessary, of course, that there should be bearings of some kind to support the wheel or the shaft when resisting the pressure of the operating fluid, and as well in resisting the pressure of the scale in the boiler tubes.

With these observations we approach the patent in suit. The first claim only is involved. It is as follows:

"1. A turbine-motor for boiler-tube cleaners, comprising a head or casing consisting of two separable sections, the rear section having at its front end a diaphragm with passages therethrough to direct the motor fluid against the wheel, the forward section having at its front end a diaphragm with openings for the passage of the motor fluid, said diaphragms defining the front and rear ends of a chamber within said casing, a turbine-wheel located in said chamber and supported directly on the front and rear bearings carried by the front and rear diaphragms respectively, and a shaft fixedly connected with said wheel, projecting loosely through the front diaphragm, and adapted to receive a cleaner-head on said projecting end, substantially as described."

An analysis of that claim shows four special and distinct limitations: First, the casing shall consist of two separable sections; second, each diaphragm shall carry a bearing for the wheel; third, the wheel shall be supported directly on the diaphragm-carried bearings; and, fourth, the shaft shall project loosely through the front diaphragm.

It is a singular fact that, while several motors have been produced by the parties, the plaintiff has produced none made after the design of the patent in suit, except a model which was made for the purposes of this case. The standard motor of the plaintiff, made by it and sold to users, has a casing of which there are not two separable sections. The casing or covering, within which are the diaphragms, the turbine-wheel and the shaft, is of one piece only. There is a part intended to be attached to the casing, but that part is merely the hose connection for the introduction of the fluid to the motor. That part does not incase any part of the motor. The model shows the bearings called for by the patent. They are ball-bearings in cups seated in each diaphragm upon which rest bearing cones located and attached to either surface of the turbine-wheel. It is clear from the specification of the patent that the bearings mentioned in the claim are ball-bearings constructed in the manner shown in the model or in some other modified way as desired by those skilled in the art. The plaintiff's standard motor does not have the ball-bearings, nor does it have any bearings for the wheel supported by the diaphragm. The bearings are bush-bearings for the shaft, which extends through the wheel, and from which the wheel may be separated. There are no bearing cones attached to the wheel. In the model the shaft did not extend back of the wheel, but did extend forward through the bearing-cone on the forward surface of the wheel. The standard motor of the plaintiff has a bush-bearing extending through the rear diaphragm and another immediately forward of the wheel and extending to the front dia-

phragm. These bearings support the shaft and do not directly support the wheel. In the model, as in the patent, the shaft of the wheel projects loosely through the front diaphragm. In the standard motor of the plaintiff, owing to the type of bearing used, the shaft does not project loosely through the front diaphragm. The word "loosely," used as qualifying the word "projecting," where used in the claim to show the relation of the shaft to the front diaphragm, and the word "directly," used as qualifying the word "supported," when used in the claim to show the relation of the turbine-wheel to the bearings, must be given their full force and effect, because it appears from the file wrapper and contents that they were advisedly used to overcome the examiner's objections to the claim as it was first drawn.

The evidence confirms the doubt raised by the foregoing observations, and leads to the conclusion that there is absence of utility in the device of the patent. Although plaintiff is a large manufacturer of boiler-cleaning apparatus, it does not manufacture the apparatus disclosed in the patent. Plaintiff's officers cannot say that it was ever illustrated in plaintiff's catalogue, although other motors were illustrated therein. While it appears that some six or eight of the motors of the patent were made, yet no witness for plaintiff was able to state a place where one of the motors of the patent was ever used or tried. Utility, therefore, cannot be urged in support of the validity of the patent, especially in view of the trial by the plaintiff in certain motors anterior to the patent in suit of some of the important features of the patent. The use by the plaintiff of two sections for the casing resulted in the separation of the sections at the point where they were held together by the screw. The reason for this was the vibration. There is no utility in the device of the patent.

From the evidence in this case it must be found, also, that there was no novelty in the device of the patent. As early as May, 1899, Mr. Elliott, president of the defendant company, made drawings which were produced in evidence showing the main features of the patent in suit. From time to time for several years motors were made by the defendant to conform more or less with the drawings, but none of them proved satisfactory. The patent is a "late one in a crowded art." It presented nothing new or useful to the public. It is a paper patent. it is invalid.

Even if there were novelty or utility in the patent, the defendant cannot be held to have infringed the same. The motor of defendant has a casing of one piece only. There are no ball-bearings in defendant's motor, nor is the wheel supported *directly* on diaphragm-carried bearings as intended by the patent. The shaft does not project *loosely* through the front diaphragm. The difference between the model of the design of the patent and defendant's motor is most marked, and is easily observed by inspection. Infringement cannot be found.

The bill must be dismissed, at plaintiff's costs. Let a decree be drawn in conformity with this opinion.