ELLIOTT CO. v. LAGONDA MFG. CO.

(District Court, W. D. Pennsylvania. April 30, 1913.)

No. 78.

1. PATENTS (§ 310*)—SUIT FOR INFRINGEMENT—MULTIFARIOUSNESS OF BILL.
    A bill for infringement of a number of patents, the charge of infringement being based on the alleged breach of a license contract affecting all, is not multifarious.
    [Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 507–540; Dec. Dig. § 310.*]

2. CONTRACTS (§ 127*)—VALIDITY—AGREEMENT MADE TO SETTLE LITIGATION.
    A written agreement, made to settle litigation, will be enforced, unless impeached for fraud, accident, or mistake.
    [Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 608–615; Dec. Dig. § 127.*]

3. PATENTS (§§ 129, 209, 211*)—"LICENSE"—CONSTRUCTION—LIMITATIONS.
    By a written agreement, made between complainant and defendant to settle litigation involving patents relating to boiler-tube cleaners, defendant was licensed to manufacture, use, "and sell to others for use throughout the United States" the combination of a patent, followed immediately by the words: "But such license shall not be held to authorize the manufacture, sale, or use * * * after July 1, 1908, of any form of cleaner-head or motor that infringes letters patent on cleaner-heads or motors now or hereafter owned by" complainant. Held, that such contract limited defendant to a sale of the devices for use in the United States, and also estopped it to contest the validity of any patents owned by complainant after July 1, 1908, relating to cleaner-heads or motors, and that such limitations were valid.
    [Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 182½–186, 300, 303, 304–311; Dec. Dig. §§ 129, 209, 211.*
    For other definitions, see Words and Phrases, vol. 5, pp. 4133–4141; vol. 8, p. 7706.]

In Equity. Suit by the Elliott Company against the Lagonda Manufacturing Company. On final hearing. Decree for complainant.

Bakewell & Byrnes, of Pittsburgh, Pa., for plaintiff.
Staley & Bowman, of Springfield, Ohio, for defendant.

ORR, District Judge. This patent suit, which is now before the court upon pleadings and proofs, is not of the usual kind. Prior to February 8, 1908, the plaintiff, then known by the name of the Liberty Manufacturing Company, had instituted in this court several patent suits, charging the defendant with infringement of divers letters patent of the United States. To settle the litigation, the parties on that date entered into an agreement whereby the defendant acquired certain rights with respect to such patents. In this suit plaintiff charges the defendant with exceeding the terms and limitations of such license agreement, and by such conduct with infringement of the letters patent, which were the subjects of such agreement. As the case will turn largely upon the construction of the agreement, it

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

is herein set forth at length, with certain portions italicized for convenience.

"Agreement between the Lagonda Manufacturing Company, a corporation of Springfield, Ohio, and the Liberty Manufacturing Company, a corporation of Pittsburgh, Pennsylvania, witnesseth: That there is certain litigation pending, to wit, an appeal prosecuted in the Circuit Court of Appeals of the United States for the Third (3d) Circuit, by or on behalf of the American Brewing Company, from a decree rendered against the said company and in favor of the Liberty Manufacturing Company by the Circuit Court of the United States for the Western District of Pennsylvania, sustaining the validity of patent No. 641,092, dated January 9, 1900, and granted W. S. Elliott for tube cleaners, and now owned by said Liberty Company; a suit in equity brought by said Liberty Company against said the Lagonda Manufacturing Company in the Circuit Court of the United States for the Western District of Pennsylvania to enjoin the alleged infringement by the said Lagonda Company of said patent No. 641,092 and patent No. 656,446, dated August 21, 1900, granted to W. S. Elliott for tube-cleaning apparatus; also a suit brought by said Liberty Company against said Lagonda Company in the United States Circuit Court for the Western District of Pennsylvania to enjoin the alleged infringement by the said Lagonda Company of letters patent No. 830,808, dated September 11, 1906, and granted to A. H. Swartz for tube cleaners. That the said parties desire to settle, adjust, and compromise all of the said litigation and to relieve each of the parties from the further burden thereof. To that end it is agreed:

"First. The Lagonda Company shall procure the appeal in the cause first above mentioned to be dismissed, so as to leave the decree appealed from in full force; but no accounting is to be had in the said Circuit Court in said case, *the payment hereinafter provided to be made by the Lagonda Company* to the Liberty Company being accepted in full of all claims of the Liberty Company to damages or profits from the Lagonda Company or its customers for infringement by the manufacture, sale, or use of articles heretofore manufactured and sold by the said Lagonda Company in infringement of the said letters patent No. 641,092, or for the future use of such articles by any of the customers of the said Lagonda Company; and the Lagonda Company shall have, and is hereby granted, a license without royalties to manufacture and sell, to boiler users and dealers only, cleaner-heads made under said patent No. 641,092, and repairs and parts for same, as well as repairs and parts for such cleaner-heads heretofore made and sold by it, which license shall expire July 1, 1908, at which time said injunction shall have full effect. But said Lagonda Company in its sales to dealers shall maintain its existing prices; it shall confine its sales to present customers; *it shall not solicit* them to give it orders, but shall only fill such orders as are sent it by its present customers, the object being to prevent the flooding of the market by sales by said Lagonda Company to dealers at reduced prices, prior to July 1, 1908. Said Liberty Company agrees to furnish such repairs and parts as may be needed by the prior customers of the Lagonda Company at its usual prices and terms made at the time to its customers for similar repairs and parts, and said Liberty Company is not to molest or disturb by suit or otherwise the customers of the Lagonda Company in the use of the cleaner-heads sold by said Lagonda Company prior to July 1, 1908, and this shall include American Brewing Company, the defendant in the cause above mentioned.

"Second. Consent decrees are to be entered in favor of the complainant in each of the other two pending cases above referred to in the usual form, excepting that all right to an accounting for past infringement in each case shall be waived. The Lagonda Company shall at once discontinue the manufacture of the Swartz patented drill, by casting the drill-head about the stem, but it shall have the right within sixty (60) days hereafter to dispose of its stock of said drills now on hand to the number of two thousand (2,000), reporting, however, to said Liberty Company all such sales, with the date of sale, name of customer, and number sold, and said Lagonda Company shall have, and is hereby granted, a license without royalty under said patent No. 830,808, to manufacture, use, *and sell to others for use throughout the United States*

such *drill-heads made other than by casting the head about the stem*, which license shall ·be for the full remainder of the term of said letters patent. The said Lagonda Company is to have the right, and it is hereby given a license, without royalty, to make, use, *and sell to others for use throughout the United States*, the general· combination comprising a motor, universal joint, and cleaner-head covered by said letters patent No. 656,446, for the full remainder of the term of said letters patent; *but such license shall not be held to authorize the manufacture, sale, or use by said Lagonda Company, after July 1, 1908, of any form of cleaner-head* OR MOTOR THAT INFRINGES *letters patent on cleaner-heads or motors now or hereafter owned by the Liberty Company.* Said Liberty Company is not to disturb by suit or otherwise any of the customers of said Lagonda Company on account of the past or future use of articles heretofore made and sold by said Lagonda Company in infringement of either of said last-mentioned patents, all of such articles being regarded as though rightfully made and sold by the said Lagonda Company; but neither this clause nor clause 1 hereof shall extend to cleaners and parts thereof made by said customers, or procured by them from parties other than the Liberty Company, after July 1, 1908.· The licenses hereinbefore referred to shall be personal to the Lagonda Company, and its successors in business, and shall not be assignable in whole or in part, excepting to such successors in business.

"Third. The Lagonda Company is to pay to the Liberty Company the sum of three thousand dollars ($3,000.00) within ninety (90) days from the date hereof in full for all damages, profits, and costs of suit·for past infringement by itself and its customers of any of the said letters patent, and as compensation to said Liberty Company for the future use by the customers of said Lagonda Company of such infringing devices heretofore sold to them by it. and also as compensation for the licenses hereinbefore referred to, and the right to dispose of the said stock of drills now on hand; and no costs shall be awarded in favor of either party against the other in any of the said suits hereinbefore referred to, the judgment for costs in the Circuit Court in the case first above referred to shall be entered satisfied, and the unpaid costs in any and all cases shall be paid by the party making the same.

"Fourth. Neither of the parties hereto shall hereafter make any printed advertisement of the terms of this settlement, or of any of the decrees hereinbefore referred to, either by circular or otherwise; but the Lagonda Company may, by circulars, advise the trade of its intention to abandon on July 1, 1908, the manufacture and sale of cleaner-heads made according to the said letters patent No. 641,092 and repairs and parts for same.

"Witness the signatures of the parties this 8th day of February, 1908.

"The Lagonda Mfg. Co.,
"By H. S. Bradley, Prest.
"Liberty Manufacturing Co.,
"By W. S. Elliott, Prest."

From the foregoing agreement it is clear that the parties were then competitors in the manufacture and sale of apparatus to be used in cleaning boiler tubes, that the defendant recognized title to the various letters patent to·be in the plaintiff, that the defendant was willing to take and did take licenses from the plaintiff, and that such licenses were intended to be limited in several respects.

The limitation with respect to patent No. 641,092 (not involved in this litigation) is not territorial, but temporal. The words "to sell to others for use throughout the United States," which appear in the grant with respect to patent No. 830,808, and as well in the grant with respect to patent No. 656,446, are not found in the limitation thrown around the first patent. The exclusion of those words from one grant and their inclusion in the·others indicate the intention to narrow the field of operations under the last two licenses. It is the·

plaintiff's contention that such words are in the nature of a territorial limitation. Plaintiff charges in its bill that defendant is selling the devices of patents No. 830,808 and No. 656,446 in countries other than the United States, for use in such foreign countries.

Further it is provided in the agreement that the defendant should at once cease the manufacture of drill-heads covered by the Swartz patent, No. 830,808, by casting the head around the stem, but is granted a license under said patent to manfacture drill-heads other than by casting the heads around the stem. Plaintiff by its bill charges that defendant is and has been continuously manufacturing and selling drill-heads covered by said patent and made by casting the head about the stem.

Further, it is provided that the license to make, use, and sell the triple combination patent covering a motor, universal joint, and cleaner-head, should not authorize the defendant to manufacture, sell, or use, after a given date, any form of cleaner-head or motor that infringes patents either then or thereafter owned by the plaintiff. The plaintiff has charged by its bill that defendant is manufacturing and selling boiler-cleaning apparatus comprising a motor, universal joint, and cleaner-head, of which the motor is covered and protected by United States patents No. 874,174, No. 983,032, and No. 983,034, each being for a motor or turbine and all being owned by the plaintiff. The three patents last named, as well as the drill-head patent and the triple combination patent, are necessarily set forth in the bill, as all are involved in the alleged infringement.

The prayers for relief are such as would naturally follow the averments above outlined.

The answer does not contain a single specific denial of any of the acts charged in the bill. It is true there is a general denial that defendant has violated the terms of the said agreement, or of the said decrees of court therein recited, but such denial is the conclusion of the pleader.

The defense, by answer in brief, appears to rest upon two grounds only: (1) That the bill is multifarious; and (2) that all the patents are invalid. The defense by argument has added: (3) That there are no such limitations in the license agreement as claimed by plaintiff; and (4) laches of plaintiff.

[1] (1) The bill should not be dismissed as multifarious. All the patents relate to apparatus for the cleansing of boiler tubes. The general character of such apparatus is described in an opinion handed down herewith in a patent suit brought by the defendant herein against the plaintiff herein. 205 Fed. 149. There was omitted from the discussion in that case reference to a joint between the cleaning-head and the motor, because the apparatus there under consideration had the cleaner or cutter-head so fixed to the shaft of the motor that it had but the motion of the shaft. It is apparent that the interposition of the joint will give an added motion. A motor, the joint, and a cleaning-head are sold as a set. The motor of one set may be a water motor, while the motor of another set may be an air motor. The other parts are interchangeable with either kind of motor. These

facts would justify the joinder of all the patents in one suit, if this were an ordinary suit for infringement. It is well known by this time that the true criterion of "multifariousness" is "convenience." This case, however, is not the ordinary case of infringement, but the case of breach of contract, to which all the patents bear some relation.

[2] (2) The defendant has no standing to contest the *validity* of the patents. As to the two patents set up in the agreement, it is estopped by the decrees, as well as by the agreement itself. As to the three patents not recited in the agreement, it is estopped by the limitation upon the license granted to it, if the language be such as to create limitation.

The settlement of litigation has always been encouraged. Even certain parol agreements, followed by acquiescence, have been upheld, such as family settlements, parol partitions, and the like. Written agreements have always been upheld, except when there may have been some fraud, accident, or mistake, or where the agreement is against public policy. Indeed, to set aside a written agreement, some fraud, accident, or mistake must both be alleged and proved. *In the case at bar there is no allegation nor proof of any fraud, accident, or mistake.* For this reason, if for no other, all previous negotiations must be held to have been merged in the agreement. The agreement, therefore, must stand as it was written and executed, unless it be illegal. There is nothing in the agreement against the policy of the law. The Constitution of the United States and legislative enactment have provided for the granting of patents to inventors. Therefore patents are presumed to be valid. That defendant was willing to accept future patents as valid, so far at least as they related to the subject-matter of the agreement, is not to be doubted. By the agreement to settle pending litigation, defendant must be held to have agreed to accept the decision of the Patent Office as final as to the validity of all future patents of the plaintiff on cleaner-heads or motors. If any other conclusion were arrived at, the agreement would be deemed to have less force and effect than was intended by the parties. Their differences would not have been settled, as was clearly their intention.

Defendant did not agree to submit the question of infringement to the plaintiff, nor to surrender its rights as to noninfringing apparatus. The question of infringement was left open, and would be a real question in this case, if there were any doubt raised by the evidence that the cleaner-heads and motors now made and sold by the defendant do not infringe the patents of the plaintiff. It is really not seriously denied by the defendant's witnesses that the devices of the defendant are within the claims of the plaintiff's patents. In the language of the contract, the devices "infringe" letters patent of the plaintiff. There is, therefore, no necessity of discussing the similarity between the devices of the respective parties. To do so, and to consider the prior art, are equally unnecessary for the decision of this case.

[3] (3) The court is satisfied that the limitations as claimed by the plaintiff are clearly expressed in the contract and that they are valid. The word "license" means:

"Authority or liberty to do or forbear some act; * * * a grant of authorization; a permit." Century Dictionary.

Plaintiff by the agreement gave defendant a license, which defendant accepted, to make, use, and sell the triple combination of patent No. 656,446, and immediately after, in the same sentence, the parties used these words:

"But such license shall not be held to authorize the manufacture, sale, or use by said Lagonda Company, after July 1, 1908, of any form of cleaner-head or motor that infringes letters patent on cleaner-heads or motors now or hereafter owned by the Liberty Company."

The words of grant and the words of qualification are immediately connected and together express the terms of the license. It is not a case of inconsistency between words of conveyance and words of defeasance found in different parts of the contract. The word *but* is the regular adversative conjunction connecting the qualification to the grant. Defendant has argued that the use of the word "infringes" has rendered the qualification of no effect, that "infringe" is a word of technical meaning, that the act of infringement is a tort, and that inanimate objects cannot commit a tort. The court believes that the word was used as it is used every day by patent experts and attorneys. "Infringing devices" and "devices infringe the patent" are combinations of words in common use.

Defendant further argues that the words "letters-patent" mean only the "paper writing" issued by the Commissioner of Patents, that such *paper writing* is not the thing which may be infringed, that it is the right to the invention described in the patent which may be infringed, and that, if there be no novelty, utility, and invention in the device of the patent, there is no right thereto which can be infringed. Such is the argument by which defendant supports its contention that it may attack the validity of the patents on cleaner-heads and motors owned by the plaintiff. The plausibility of this argument is lost when the agreement is taken by its four corners, and the intention of the parties is ascertained. As has been above pointed out, the main intent of the parties was to settle existing litigation and to outline their relations for the future in respect to the patents involved. The limited authority granted by plaintiff to defendant should not be extended by judicial act.

The other limitation as to sales throughout the United States is not more doubtful. At the time the contract was made the parties were competitors in foreign countries. By the agreement they were settling their lawsuits and providing for the future. The language with respect to each of the two patents of the contract involved in this suit is practically the same:

"The said Lagonda Company is to have the right, and it is hereby given a license, without royalty, to make, use, and sell to others for use throughout the United States, the general combination," etc.

There is no ambiguity in that language. Authority or permission was given to defendant to exercise certain privileges over property which defendant recognized to be that of the plaintiff. Such authority cannot be extended beyond the express terms in which it is given. The words "sell to others for use throughout the United States," because they were used by the parties, must have been intentionally used. They must be given their plain, ordinary meaning as words of limitation, especially as such words are omitted from the grant of a license under patent No. 641,092, recited in the contract. Such limitation seems to be approved in Dorsey, etc., Co. v. Bradley Mfg. Co., 7 Fed. Cas. 946.

(4) The court cannot find laches by the plaintiff. The delay, if any, was due to correspondence, etc. Defendant was not prejudiced by any act of the plaintiff. The defendant is maintaining a strenuous competition with plaintiff. In so doing it is exceeding the terms and limitations of the license by selling to others for use outside of the United States the apparatus of the patents set forth in the agreement, and by making and selling forms of cleaner-heads and motors that infringe letters patent owned by plaintiff. Defendant has cut prices; plaintiff has suffered pecuniary loss, and is likely to suffer in the future irreparable injury, if the defendant be not restrained.

The plaintiff, therefore, is entitled to the injunction and damages in accordance with the prayers of the bill, together with all costs. Let a decree be drawn