ELLIOTT CO. v. LAGONDA MFG. CO.

(District Court, W. D. Pennsylvania. April 10, 1915.)

No. 78.

PATENTS ⬤═328—VALIDITY AND INFRINGEMENT—TURBINE.

The Elliott and Faber patent No. 874,174, for a turbine, relating to apparatus especially adapted to removing scale from boiler tubes, held void for lack of invention; and the Elliott and Faber patent, No. 983,032, also for a turbine, and the Elliott patent, No. 983,034, for a motor, *held* not infringed, if conceded validity.

In Equity. Suit by the Elliott Company against the Lagonda Manufacturing Company. On final hearing. Decree for defendant.

Bakewell & Byrnes, of Pittsburgh, Pa., for plaintiff.

Staley & Bowman, of Springfield, Ohio, for defendant.

ORR, District Judge. This suit, as brought originally, charged the defendant with the infringement of plaintiff's rights under five several patents of the United States. This court, upon the disposition of the case when it was first before it for final decree, found for the plaintiff with respect to all of the said patents, believing that they were all within the terms of an agreement between the parties which had been violated by the defendant, and that no consideration of the several patents hereinafter mentioned as in controversy was therefore required. 205 Fed. 152. Upon appeal by the defendant, the Circuit Court of Appeals of this circuit modified the decree by excluding from the injunction issued by this court letters patent of the United States No. 874,174, issued to Elliott & Faber on December 17, 1907, for a turbine, patent No. 983,032, issued to Elliott & Faber on January 31, 1911, for a turbine, and patent No. 983,034, issued to Elliott under date of January 31, 1911, for a motor. 214 Fed. 578, 131 C. C. A. 158.

To determine whether the said patents are valid, and whether they have been infringed, further trial was had. The disposition of the matters in controversy after such trial is now before the court. The plaintiff complains that the defendant is making and selling—first, a water motor, embracing the construction disclosed by Elliott & Faber patent, No. 874,174, and also a construction disclosed by Elliott & Faber patent, No. 983,032; and second, an air motor, embracing a construction disclosed by Elliott & Faber patent, No. 983,032, and also a novel construction disclosed by Elliott patent, No. 983,034.

The ingenuity of counsel who procured the patents has succeeded in variations of language to the extent that in patent No. 874,174 there are 24 claims, of which, however, claims 1 to 7, inclusive, and 16 and 20 only are involved in this litigation. The like ingenuity has resulted in 41 claims in Elliott & Faber patent, No. 983,032, of which, however, claims 1 to 7, inclusive, 9, 11, 13, 15, 16, 22, 23, 30, and 31 to 41, inclusive, are involved in this case with respect to the water motor, and claims 1, 4, 11, and 30 to 41, both inclusive, except claim 40, are involved with respect to the air motor. A like ingenuity has resulted in

⬤═For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

15 claims in the Elliott patent, No. 983,034, of which, however, claims 10, 11, 13, 14, and 15 only are involved in this litigation. Without yielding in any particular plaintiff's position as to any of the numerous claims involved, plaintiff's counsel at the trial proposed to limit the discussion to claims 2, 5, 7, and 16 of Elliott & Faber patent, No. 874,-174, to claims 4, 11, 34, and 41 of Elliott & Faber patent, No. 983,032, and to claims 10 and 14 of Elliott patent, No. 983,034.

A detailed discussion of the several claims·would extend this opinion to unnecessary length. It is necessary only to determine the essential features of the constructions of the several patents, whether such features are found in motors manufactured and sold by the defendant, and whether such features are found in the prior art, or, if not clearly disclosed therein, whether any inventive faculty was required to conceive such constructions. Language used by this court in an opinion in the case of Elliott Co. v. Robertson, No. 4, May Term, 1914 (D. C.) 219 Fed. 899, may properly be adopted in explanation of the subject-matter of the several patents:

"All of said patents relate to apparatus especially adapted to removing scale from boiler tubes. The immediate factor in the removal of the scale is a cleaner head of some accepted form, which is fastened to a shaft extending through the motor, and which revolves with said shaft as said shaft is made to revolve by the operation of the motor. The shaft is made to operate by the pressure of air or steam, or some fluid forced through the end of the motor or turbine opposite to that to which the cleaner head is attached. In a turbine the motor fluid is pressed through a diaphragm, and in such way as to operate directly against a turbine wheel, thereby causing it to move with rapidity and force enough to move the shaft which is attached to the turbine wheel, which shaft is also the shaft to which the cleaner head is attached. In the rotary motors, the air or steam is forced along one side of a cylindrical chamber, which is concentric to the motor and concentric to the shaft to which the cleaner head is attached, and is forced into such piston chamber through ports from the inlet passage. The air forced thus into the piston chamber presses against a blade or blades extended longitudinally therewith and inserted into longitudinal slots in the shaft in such way as to have a lateral movement as the shaft revolves, thereby causing the space in the cylinder around the shaft to be always divided into two or more longitudinal divisions. To relieve the pressure in the cylinder which would be constant if there were no exhaust, a longitudinal outlet is made from ports which extend from the cylinder. The inlet ports and the exhaust ports are less than 180° from each other in one direction. The pressure of the air or steam against a blade forces it and the shaft in the direction of least resistance until the blade passes the exhaust ports, and as it passes the exhaust ports that pressure is relieved, but a new pressure begins by another blade having reached the position where the pressure from the inlet ports continues the revolution of the shaft. Of course, there are bearings provided for the shaft and means by which the apparatus may be lubricated."

It should also be stated that for the escape of the motor fluid, and as well to drive the loosened scale away from the operator by the force of such fluid, the front of the motor near the cleaner head should be provided with an outlet or vent. The outlet for water, which is not elastic, should be larger than that for air, which is elastic. Because of this fact, and because, also, the front bearing of the shaft should be supported, the water from the turbine finds its outlet through webs connected with the bearing and the front ends of the turbine casing. As has been seen, the air or steam from the rotary motor escapes

through an exhaust port, which can in no sense be an escape through webs. It is hard to conceive that such constructions can be the subject of 32 valid claims in three separate patents. The specifications of the patents respectively indicate that turbines and motors for the purposes aforesaid are old in the art. The evidence shows that such earlier turbines and motors would operate effectively in light work, and that some of them would operate effectively in heavy work necessary to the removal of hard scale from boiler tubes.

The essential features of the several patents are the peculiar construction of the casing and the bearings in combination with the means for locking the stationary and movable members within the casing. This is a fair conclusion from a reading of the patents and from the evidence, not only of plaintiff's expert witness, but also from the evidence of Mr. Elliott, the patentee and president of the plaintiff company. The latter testified in reference to the plaintiff's machines:

"The integral front bearing and the means for locking the parts in place within the machine are unquestionably the basis of the success of those machines."

The Elliott & Faber patent, No. 874,174, specially emphasizes longitudinal webs, integral with the casing, which support a bearing for the forward part of the rotary shaft. The difference between the construction of Elliott & Faber patent, No. 874,174, and that of Elliott & Faber patent, No. 983,032, appears to be with respect to the rear bearing only of the rotary shaft. What appears in respect to such rear bearing is disclosed, but not claimed, in the prior patent. That the later patent is a subdivision of the earlier is not clear, because there is nothing in the second application to indicate it, and because the drawings in the two patents are not the same in all respects. The later patent provides that the rear bearing of the rotary shaft shall extend into or through the stationary turbine member. That is the essential feature of Elliott & Faber patent No. 983,032.

Taking up, now, Elliott patent, No. 983,034, it is found that the essential feature therein disclosed is the means for holding the stationary, as well as the movable, parts in place within the casing. In the study of these patents, as in the study of some other patents relating to different arts, the court is impressed with the facility with which patents may be obtained for mere shop practices. From the evidence in this case it appears that, by reason of changing conditions, users of tube-cleaning apparatus required stronger flue cleaners. A tube cleaner which would be fit to remove soot or light scale would soon give way under the strain of removing heavy scale. The aim of the manufacturers of the cleaners had been to prolong the life of their cleaners, and the most apparent requirement for that purpose was increased strength. When it is considered that the tube cleaners have got to be small in diameter in order to be effective in a boiler tube, and when it is considered that, to strengthen the webs through which the motor fluid escapes, it is necessary to extend them longitudinally within the casing in order not to diminish the outlet for the fluid, it cannot be held that there is invention in meeting an obvious requirement in an obvious way.

It would serve no purpose to set forth the great number of patents of the prior art in which there is a casing surrounding the turbines or motors, and in which there are bearings; but it is well to note that in the patent to W. S. Elliott, under date of October 17, 1899, No. 635,163, the inventor calls his casing a cylindrical water shield, within which are the stationary and rotating turbine wheels. The same patentee, in patent No. 656,446, under date of August 21, 1900, calls the casing a sheathing. There is no invention in strengthening the casing surrounding movable parts. There is no invention in providing bushings for bearings, or in making such bushings removable. With respect to the claims of this patent, No. 874,174, complainant's expert stated that only one covered a completely operative structure. The other claims are for combinations "which are operative structures when used in conjunction with such other turbine parts as are old and well known in the art." Claim 7 is as follows:

"7. In a turbine, a barrel or casing having inwardly projecting webs supporting a bearing, a removable bushing for said bearing, a turbine wheel having a forwardly projecting shaft within the bushing, a stationary turbine member secured within the casing at the rear of the turbine wheel, and rear nozzle or supply chamber secured at the rear end of the casing, substantially as described."

That claim this court is constrained to hold is invalid, and, that being so, the patent is invalid.

As has been stated, the essential feature of Elliott & Faber patent, No. 983,032, is the extension of the rear bearing of the rotary shaft in or through the stationary turbine member. The court deems it unnecessary to consider this patent at length. It is sufficient to say that the location of a bearing in a stationary part of a machine should not be deemed invention at this late date. It is not necessary to decide that all of the 41 claims of this patent are invalid; but it is proper to hold, and the court does hold, that the defendant cannot be held to be an infringer by the use of the essential feature of the patent which we have considered.

We again take up Elliott patent, No. 983,034. We find in the turbine of the prior art the stationary member was often inserted in its place by being screwed into the casing, the interior of the casing and the circumferential exterior of the stationary member being threaded for that purpose. There was also used a socket member, to which the hose was attached, which was so threaded that it screwed into the casing after the stationary member had been screwed, and helped to hold the same in place. This Elliott patent contemplates that the stationary member may not be threaded, but shall be so constructed that it will fit in against a shoulder in the casing against which it will be held by the pressure of the screw-threaded socket member to which the hose may be attached. In the Prentice & Gregory patent of September 2, 1902, No. 708,254, we find that the stationary part of the motor is not screw-threaded, and that it is seated against an internal shoulder in the casing, and that the stationary member is held in place because the screw-threaded socket member, to which the hose is attached, presses against the same. It is not necessary to determine that all of the 15 claims of this patent, or any of them, are invalid; but it

is important to hold, and the court does hold, that the defendant can-. not be charged as an infringer in the use of that construction of the patent which we have found to be the essential feature.

Having reached the foregoing conclusions, it is not necessary to differentiate between the motors sold by the plaintiff and those sold by the defendant. A decree should be entered in favor of the defendant as to the three patents now under consideration, and the plaintiff should be required to pay all the costs which may properly have been incurred by the defendant in the litigation, so far as said three several patents were the subject thereof.